# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CRYSTAL C.[1],

                                        Plaintiff,

            v.                                          5:20-CV-807
                                                        (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
AMELIA STEWART, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the
Honorable Frederick J. Scullin, Jr., Senior United States District Court Judge, pursuant
to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance
with General Order 18.

## I.    PROCEDURAL HISTORY

On May 4, 2016, plaintiff filed concurrent applications for Disability Insurance
Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability
beginning April 1, 1995. (Administrative Transcript ("T") at 114, 123, 218–28). Her
application was denied initially on July 27, 2016. (T. 124–31). At the request of the

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Northern
District of New York in June 2018 in order to better protect personal and medical information of non-
governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her
first name and last initial.

plaintiff, Administrative Law Judge ("ALJ") Laureen Penn conducted a hearing on February 19, 2019,[2] at which plaintiff gave limited testimony with the assistance of legal counsel.  (T. 42–93).  The ALJ also heard testimony from vocational expert ("VE"), Denise Meredith.  (*Id.*).

In a decision dated April 4, 2019, the ALJ found that plaintiff was not disabled.  (T. 11–30).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 15, 2020.  (T. 1–3).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[2]Plaintiff initially appeared for an administrative hearing on September 28, 2018.  (T. 95–103).  After conferring with the plaintiff, ALJ Lawrence Levey postponed that hearing in order for plaintiff to obtain legal counsel.  (*Id.*).

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

Plaintiff struggled to give testimony at the administrative hearing. Her attorney attributed this to plaintiff's severe anxiety and situational discomfort. (T. 50). After

several unsuccessful attempts to elicit substantive testimony from plaintiff, counsel indicated that plaintiff was having a borderline panic attack. (T. 50–52). The ALJ subsequently permitted counsel to elicit testimony from plaintiff in the form of yes/no questions. (T. 52).

Plaintiff was born on December 1, 1972, making her 46 years old on the date of the administrative hearing. She dropped out of school in the tenth grade, after which she made several unsuccessful attempts to earn her GED. (T. 56–57). She previously trained and worked as a certified nurse aide ("CNA"). (T. 57). Plaintiff lived in an apartment with her fifteen-year-old daughter. (T. 55). She owned and operated her own vehicle, but many aspects of driving made her anxious. (T. 55–56). Plaintiff was unable to take public transportation or drive with people other than her children. (T. 56).

Plaintiff suffered from allergies, anxiety, and post-traumatic stress disorder. (T. 54). She experienced panic attacks almost daily. (T. 62–63). She smoked up to two packs of cigarettes a day, and had developed COPD with emphysema. (T. 54–55, 60–61). She also had a history of chronic bronchitis, chest pain, neck pain, and back pain. (*Id.*). Her obsessive compulsive disorder ("OCD") made it difficult to sit for long periods of time in unfamiliar places. (T. 59). Plaintiff was diagnosed with carpal tunnel syndrome in both hands, having had past surgical intervention in her left hand. (T. 60). Her anxiety caused her to wake up often during the night, and she suffered from nightmares and flashbacks. (*Id.*).

Plaintiff could accomplish most activities of daily living, albeit with some

limitations.  (T. 57–59).  She did not socialize outside of her family, and enjoyed

spending time drinking coffee, smoking, cleaning, and going on Facebook.  (T. 61).

## IV.    THE ALJ'S DECISION

After determining that the plaintiff met the insured status requirements of the

Social Security Act through December 31, 2000, the ALJ then found that plaintiff had

not engaged in substantial gainful activity since her alleged onset date of April 1, 1995.

(T. 14).  Next, at step two, the ALJ found that plaintiff had the following severe

impairments: asthma-chronic obstructive pulmonary disease overlap syndrome; asthma;

previous left spontaneous pneumothorax; chronic obstructive pulmonary disease with

emphysema; mild degenerative disc disease involving the C5-C6 level; intervertebral

disc degeneration, cervical; emotional disorder; post-traumatic stress disorder with

panic attacks; unspecified depressive disorder; generalized anxiety disorder; anxiety;

and depression.  (*Id.*).  At the third step, the ALJ determined that plaintiff's

impairments did not meet or medically equal the criteria of any listed impairments in

Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 17).

At step four, the ALJ found that plaintiff had the residual functional capacity to

perform medium work, except

> she can lift and carry 50 pounds occasionally and 25 pounds
> frequently.  She can stand and walk for six hours.  She can sit for
> six hours.  She can frequently stoop, crouch, kneel and crawl.
> She can frequently climb stairs and ramps, but cannot climb
> ladders, ropes, or scaffolds.  She needs to avoid more than
> moderate exposure to extreme cold, fumes, odors, dusts, gases,
> poor ventilation, and other pulmonary irritants.  She can
> perform simple, routine, repetitive work.  She can occasionally

> interact with supervisors and coworkers and can have incidental
> contact with the public, but cannot provide direct customer
> service.  She can perform occasional decision making.

(T. 20).

Next, the ALJ determined that plaintiff was unable to perform any past relevant work.  (T. 28).  However, the ALJ evaluated the VE's testimony and found that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (T. 29–30).  Thus, the ALJ found that plaintiff was not disabled.  (T. 30).

## V.    **ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1.    The ALJ improperly evaluated the opinion evidence concerning plaintiff's mental health to the extent she relied on an unsupported assumption of a gap in treatment.  (Plaintiff's Brief ("Pl.'s Br.") at 14–19) (Dkt. No. 16).

2.    The ALJ improperly assessed plaintiff's subjective complaints. ("Pl.'s Br. at 19–20).

Defendant argues that substantial evidence supports the ALJ's findings that plaintiff could sustain full-time work. (Defendant's Brief ("Def.'s Br.") at 4–19) (Dkt. No. 19).  For the following reasons, this court agrees that the ALJ erred in certain aspects of her analysis, and recommends remand for further administrative proceedings in order for the ALJ to craft an RFC that is supported by substantial evidence in the record.

## DISCUSSION

**VI.    RFC EVALUATION/TREATING PHYSICIAN/EVALUATION OF SYMPTOMS**

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions

plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the

evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." In *Estrella v. Berryhill*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence[.]" *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Estrella*, 925 F.3d at 96.  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed[.]"  *Id.*

### 3.     Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must

take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*,

606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence

presented by claimants regarding their symptoms, which fall into seven relevant factors

including 'daily activities' and the 'location, duration, frequency, and intensity of

[their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326,

2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3);

Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in

Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-

regulatory policy" because the regulations themselves do not use that term. SSR 16-3p,

81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[3]

The evaluation of symptoms involves a two-step process.  First, the ALJ must

determine, based upon the objective medical evidence, whether the medical

impairments "could reasonably be expected to produce the pain or other symptoms

alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the

claimant's] alleged functional limitations and restrictions due to pain or other

---

[3] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[4]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744

---

[4] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

(S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

## B.    Application

Plaintiff's challenges are limited to the ALJ's assessment of her mental impairments.  Specifically, plaintiff argues that the ALJ erred in assigning less than controlling weight to the joint opinion of plaintiff's treating therapist, Karrigan L. Murphy, L.M.F.T., and psychiatrist, Jason Stepkovitch, M.D.  Plaintiff further posits that, on this record, the ALJ's rejection of the treating providers' opinions regarding functional limitations resulted in a mental RFC determination that was not supported by substantial evidence.  Plaintiff contends that the ALJ improperly crafted his RFC determination based on the ALJ's own lay interpretation of plaintiff's treatment history.  Last, plaintiff contests the ALJ's evaluation of her subjective complaints.  Plaintiff contends that these errors warrant remand.

The court will briefly summarize the opinion evidence of record relating to plaintiff's mental health treatment, before analyzing the ALJ's evaluation of such evidence.  On April 26, 2016, plaintiff's treating therapist, Ms. Murphy, prepared a statement regarding plaintiff's participation in mental health services under her care. (T. 447).  Ms. Murphy stated that plaintiff had been a patient of the Brownell Center for Behavioral Health Services since August 2014, where she attended psychotherapy sessions on a weekly basis.  (*Id.*).  Ms. Murphy then opined that plaintiff was "unable to work."  (*Id.*).  According to Ms. Murphy, the severe symptoms of plaintiff's anxiety,

13

panic attacks, and moderate agoraphobia prevented plaintiff from being able to participate in activities that required consistent daily attendance, interactions with the public, physical stress, and/or increased emotional stress. (*Id.*).

The ALJ considered Ms. Murphy's statement in her written opinion, finding that it was "conclusory and not supported by serious ongoing objective findings." (T. 26). The ALJ further indicated that Ms. Murphy's report of "severe" symptoms of anxiety and moderate agoraphobia, which purportedly prevented plaintiff from performing various functions necessary for employment, were inconsistent with plaintiff's "generally moderate mental status examination findings and her significant reported activities, including caring for her children and mother." (T. 26–27). For these reasons, the ALJ afforded Ms. Murphy's statement "only some weight" as to the severity of plaintiff's impairments.

The record also contains an opinion by Jeanne A. Shapiro, Ph.D., who performed a one-time consultative psychiatric examination of plaintiff on June 27, 2016. (T. 394–98). After summarizing plaintiff's psychiatric and medical history as reported by the plaintiff, Dr. Shapiro noted plaintiff's subjective statements relative to her current functioning. (T. 395–96). Dr. Shapiro then performed a mental status examination of plaintiff. According to the consultative examiner's findings, plaintiff was cooperative, with an adequate manner of relating, social skills, and overall presentation. (T. 396). She was also appropriately dressed, with good grooming and hygiene. (*Id.*). Her posture and motor behavior was normal, and she displayed appropriate eye contact. (*Id.*). Plaintiff's speech was fluent and clear, with adequate expressive and receptive

language. (*Id.*). Her thought processes were coherent and goal directed, with no evidence of delusions, hallucinations, or disordered thinking. (*Id.*). Plaintiff's mood was anxious, and she was noted to be tense and apprehensive. (*Id.*). She was fully oriented, with her attention and concentration intact. (T. 396–97). Her recent and remote memory skills were also intact. (T. 397). Plaintiff's intellectual functioning was estimated to be in the borderline range, and she exhibited fair insight and judgment. (*Id.*).

The ALJ explicitly considered the opinion of Dr. Shapiro, noting that although she was an examining source, she did not have an ongoing treating relationship with plaintiff. (T. 26). The ALJ further acknowledged that, although Dr. Shapiro performed a detailed evaluation of plaintiff, "there was no specific assessment of the [plaintiff's] work limitations, only a vague statement that the [plaintiff's] psychiatric problems might 'interfere with the [plaintiff's] ability to function to some degree on a daily basis.'" (*Id.*). Thus, the ALJ afforded Dr. Shapiro's report "only some weight." (*Id.*).

On July 25, 2016, state agency consultant K. Lieber-Diaz, Psy.D., reviewed the record in conjunction with the initial determination of plaintiff's disability claims. (T. 108–09). Based upon her record review, Dr. Lieber-Diaz opined that plaintiff's mental impairments caused "mild" restriction of activities of daily living, "mild" difficulties in maintaining social functioning, and "mild" difficulties in maintaining concentration, persistence or pace. (T. 109). Dr. Lieber-Diaz noted plaintiff's remote history of psychological hospitalization seven years ago, and her current course of treatment at the Brownell Center relative to symptoms of anxiety. (T. 109). Dr. Lieber-Diaz also cited

15

various observations made by Dr. Shapiro at the consultative psychiatric examination. (*Id.*). Dr. Lieber-Diaz indicated that plaintiff was "capable of self care [and activities of daily living]," and further noted that plaintiff "manages money, drives, shops, [and] gets along with family." (*Id.*). She opined that plaintiff's psychiatric impairment was non-severe. (*Id.*).

The ALJ explicitly considered Dr. Lieber-Diaz's assessment, giving it "only some weight" as to the severity of plaintiff's impairments. (T. 25). The ALJ noted that although the state agency consultant was a highly qualified expert in social security disability determinations, she was not an examining source. (*Id.*). She also noted that a "significant portion of the record" was received after Dr. Lieber-Diaz's assessment. (*Id.*). Ultimately, the ALJ determined that the records subsequently received from plaintiff supported "more than mild limitation[s]." (*Id.*).

On February 7, 2019, plaintiff's therapist, Ms. Murphy, filled out a Mental Impairment Questionnaire which was subsequently co-signed by Dr. Stepkovitch. (T. 1817–22). According to the questionnaire, plaintiff had been receiving mental health treatment in the form of weekly psychotherapy sessions since August 19, 2014. (T. 1817). She also attended monthly visits for medication management. (*Id.*). After identifying several symptoms attributable to plaintiff's mental health impairments (T. 1818), Ms. Murphy stated that plaintiff exhibited marked limitations in her ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace (T. 1819). She further opined that plaintiff exhibited moderate limitations in the ability to adapt or manage oneself. (*Id.*). In check-box form, Ms.

Murphy noted that plaintiff was either "seriously limited, but not precluded," or "unable to meet competitive standards," in all but one of the mental functions attributed to unskilled work. (T. 1820). She stated that plaintiff was unable to meet competitive standards with respect to interacting appropriately with the general public; maintaining socially appropriate behavior; traveling in unfamiliar places, and using public transportation. (T. 1821). Plaintiff was also found to have experienced a significant decline in her learning and memory. (*Id.*). With respect to absenteeism and time off-task, Ms. Murphy opined that plaintiff's impairments or treatment would cause her to be absent from work more than four days per month, and off task for 60-80% of the average day. (T. 1821–22). She concluded that plaintiff was "incapable of any work stress," and that plaintiff's condition negatively impacted her ability to complete activities of daily living. (T. 1822).

The ALJ considered the restrictive limitations set forth in the questionnaire provided by Ms. Murphy and endorsed by Dr. Stepkovitch,[5] affording it "only some weight" as to the severity of plaintiff's impairments. (T. 27). The ALJ discussed several factors she considered in affording less than controlling weight to the providers' opinion, including sporadically documented mental health treatment, a lack of significant, ongoing psychiatric symptoms, and inconsistencies between the providers'

---

[5]Because Dr. Stepkovitch, plaintiff's treating psychiatrist, reviewed and cosigned the questionnaire prepared by Ms. Murphy, this opinion was subject to evaluation under the treating physician rule. *See Fritty v. Berryhill*, No. 17-CV-0769, 2019 WL 289779, *4 (W.D.N.Y. January 23, 2019) ("where the opinion is co-signed by a treating physician, . . . the opinion should be evaluated as having been the treating physician's opinion") (internal quotations omitted); *King v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 277, 282 (W.D.N.Y. 2018) ("medical source statements cosigned by a treating physician should be evaluated as having been the treating physician's opinion") (quotation omitted). The Commissioner does not appear to dispute this issue.

findings regarding limitations and the treatment notes of record. (*Id.*).

Last, the record contains a February 2019 statement from plaintiff's "care manager," Lauren Smith. (T. 313–14). According to Ms. Smith, the purpose of a care manager was to assist those with serious persistent mental illnesses and/or those with chronic health conditions, and to manage the needs and stressors these conditions created by "being connected to the various medical, behavioral, and social systems already enacted so that the individual can live a more independent and fulfilling life." (T. 313). Her duties consisted of meeting with plaintiff a minimum of once a month to, among other things, connect her to services and address barriers to her care. (*Id.*). Ms. Smith was assigned to plaintiff's case in August 2018, working to connect her to providers that would be "receptive to providing effective means of treatment . . . while being receptive and aware of [plaintiff's] barriers with her anxiety and PTSD." (*Id.*). Ms. Smith identified some examples of how plaintiff struggled to meet her care plan goals. (T. 313–14). Ultimately, Ms. Smith opined that plaintiff could not carry out a position of employment. (T. 314). In support of her opinion, Ms. Smith cited plaintiff's inability to effectively manage her life, recall information, and interact with others. (*Id.*). She further acknowledged plaintiff's tendency to automatically accept and/or expect negative outcomes in most situations, preventing her from following through on tasks and taking action when needed. (*Id.*).

The ALJ considered Ms. Smith's statement in her written opinion, affording it "only some weight" as to the severity of plaintiff's impairments. (T. 26). The ALJ recognized that Ms. Smith did not provide mental health treatment directly to the

plaintiff, but instead worked to facilitate plaintiff's treatment with others.  (*Id.*).  The ALJ also pointed out that Ms. Smith had only provided services to the plaintiff for six months as of the date of her statement.  (*Id.*).  As for Ms. Smith's opinion concerning plaintiff's limitations and inability to work, the ALJ found that these statements were not supported by specific objective findings in the record, and they were further inconsistent with plaintiff's ability to live independently as well as care for others, including her children and mother.  (*Id.*).

Plaintiff contends that the ALJ was compelled to adopt the opinion of Ms. Murphy and Dr. Stepkovitch under the "treating physician rule," and that her failure to do so was legal error.  However, the ALJ's decision to afford less than controlling weight to the treating sources' joint opinion was not, in itself, error warranting remand.  At the outset, the ALJ sufficiently, albeit implicitly, considered the *Burgess* factors in her overall analysis of the providers' opinion.  For example, the ALJ specifically acknowledged Dr. Stepkovitch's specialty in psychiatry, and Ms. Murphy's in mental health care.  (T. 27).  *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  And, while not in the same section as her analysis of the expert opinion, the ALJ took measures in her decision to outline the specific treatment of record received from her mental health treatment team.  (T. 22–25).  *See* 20 C.F.R. §§ 404.1527(c)(2)(I-ii), 416.927(c)(2)(I-ii).  Furthermore, the ALJ discussed to what extent the providers' findings regarding limitations were consistent with plaintiff's ongoing psychiatric symptoms as observed throughout her treatment history, with Dr. Stepkovitch as well as with other providers.  (T. 27).  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Therefore, even if the ALJ

did not explicitly identify the *Burgess* factors in her evaluation of Ms. Murphy and Dr. Stepkovitch's joint opinion, the ALJ's adherence to the factors is apparent from her written decision. *See Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) ("Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation.") (citing *Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013)).

Nor did the ALJ lack good reasons for affording the providers' opinion less than controlling weight. *See Connolly v. Berryhill*, No. 3:18-CV-00185, 2020 WL 772851, at *3 (D. Conn. Feb. 18, 2020) (The "[f]ailure to explicitly consider every *Burgess* factor is also not fatal . . . if the ALJ has nonetheless provided 'good reasons' for [his] weight assessment, such that the substance of the treating physician rule was not traversed.") (modifications to original) (internal citation and quotation marks omitted). First, the ALJ correctly recognized that the record lacked evidence of plaintiff's consistent, ongoing psychiatric treatment. (T. 27). The ALJ pointed out several gaps in documented treatment during the relevant period of disability, including the absence of any psychotherapy notes from the period of time between plaintiff's application date until February 2018. (*Id.*). The ALJ acknowledged this was at odds with the providers' reports that plaintiff was engaged in therapy in March 2017. (*Id.*). Plaintiff argues that although Ms. Murphy did not issue clinical notes documenting the course of plaintiff's psychotherapy, other references throughout the record confirm that plaintiff was in fact

attending sessions with Ms. Murphy on a regular basis. (Pl.'s Br. at 16). Nevertheless, it is well settled that an ALJ is entitled to afford less than controlling weight to a provider's opinion where it is not supported by objective medical observations. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record). Thus, the ALJ did not err in determining that the providers' opinion lacked support from objective medical observations in the record, due in part to the fact Ms. Murphy's did not document her psychotherapy treatment with plaintiff.

In any event, the ALJ provided additional bases for the weight afforded to Ms. Murphy and Dr. Stepkovitch's opinion. The ALJ asserted that the providers' restrictive findings were inconsistent with the "moderate psychiatric symptoms in the limited mental status examinations of record." (T. 27). In support of this assertion, the ALJ cited to largely normal examinations from mental health specialists, such as Dr. Stepkovitch and Dr. Shapiro, in addition to plaintiff's primary care provider. (T. 27, 396–97, 917, 926, 937, 962, 965, 969, 985, 1366, 1371, 1375). Last, the ALJ noted that Dr. Stepkovitch's own examinations notes, indicating that plaintiff was maintaining functioning, were consistent with plaintiff's self reported activities and failed to support the restrictive opinion of plaintiff's mental healthcare providers. (*Id.*).

For the reasons cited above, the court finds no error warranting remand in the ALJ's treatment of Ms. Murphy and Dr. Stepkovitch's joint opinion. However, plaintiff also argues that the ALJ's evaluation of the opinion evidence resulted in an

RFC that was not supported by substantial evidence, because the mental health providers' opinion was the only medical opinion of record that assessed plaintiff's mental functioning abilities. Defendant disputes this, arguing that the ALJ properly relied in part on the "mild" limitations found by state agency consultant Dr. Lieber-Diaz. (Def.'s Br. at 12–13). This interpretation of the ALJ's opinion evaluation is less than candid. In her opinion, the ALJ afforded Dr. Lieber-Diaz's opinion "only some weight," effectively rejecting the state-agency consultant's opinion that plaintiff suffered from only mild limitations. (T. 25). Thus, the court agrees that the ALJ's process of evaluation of the opinion evidence of record, while not flawed in itself, resulted in an RFC which included mental functional capacities unsupported by any expert opinion.

As a general rule, an ALJ is "not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Penny Ann W. v. Berryhill*, No. 5:17-CV-1122 (DJS), 2018 WL 6674291, at *4 (N.D.N.Y. Dec. 19, 2018) (quoting *Barnes v. Berryhill*, No. 3:16-CV-1013, 2018 WL 1225542, at *4 (D. Conn. Mar. 9, 2018)); *see also Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting medical opinion has improperly substituted his own opinion for that of a physician . . .").

There are limited circumstances in which it may be proper for an ALJ to make an RFC determination without a functional assessment from an acceptable medical source.

22

For example, the court recognizes that "where the record reflects only minor impairments, the ALJ may, in his [or her] discretion, assess an RFC in the absence of opinion evidence." *Andriaccio v. Berryhill,* No. 18-CV-84, 2019 WL 1198357, at *7 (W.D.N.Y. Mar. 14, 2019); *see also Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (holding that "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment. . . . ") (internal quotations and citation omitted). In addition, where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]" *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 8-9 (2d Cir. 2017) (internal quotation marks and internal citation omitted); *see also Pellam v. Astrue*, 508 Fed. App'x 87, 90 (2d Cir. 2013) (finding ALJ's RFC was supported by substantial evidence where ALJ had all of the claimant's treating physician's treatment notes and consulting examining physician's opinion, which largely supported ALJ's assessment of RFC). Thus, if there is either extensive evidence demonstrating a plaintiff's functional capacity, or if the evidence demonstrates that the resulting functional impairment is very limited, it may be proper for an ALJ to draw his or her own functional assessment.

This is not a case which falls under any of the aforementioned exceptions. At the outset, "the leeway given to ALJs to make 'common sense judgments' does not typically extend to the determination of mental limitations, which are by their nature 'highly

23

complex and individualized.' " *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018) (quoting *Nasci v. Colvin*, No. 15-CV-947, 2017 WL 902135, at *9 (N.D.N.Y. Mar. 7, 2017)); *see also Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) (holding that an ALJ's ability to make common sense judgments does not extend to assessment of mental limitations); *Tavion T. v. Comm'r of Soc. Sec.*, No. 20-CV-00514, 2021 WL 1559243, at *4 (W.D.N.Y. Apr. 21, 2021) ("Unlike exertional limitations, an ALJ cannot make 'common sense' judgments about mental health impairments."). Here, considering the ALJ's finding that plaintiff's suffered from numerous, severe mental impairments, it was improper for the ALJ to assess specific and individualized mental functional capacities in the RFC, in the absence of any expert opinion supporting the same.

Moreover, this is not a case in which the other evidence of record contained analysis demonstrating the functional implications of plaintiff's mental impairments, from which the ALJ may have been able to determine plaintiff's functional abilities. For example, it is unclear on what the ALJ based her conclusion that plaintiff is able to "occasionally interact with supervisors and coworkers," or that she could "perform occasional decision making." (T. 20). The limited mental treatment notes in the record generally consist of the providers' findings upon generic mental examinations, and do not indicate plaintiff's mental limitations or functional capacities.

Based on the foregoing, the ALJ's RFC determination is not supported by substantial evidence and remand is warranted for further development of the record. *See Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6,

2015) (citing *Suide v. Astrue*, 371 F. App'x 684, 689–90 (7th Cir.2010)) ( "[I]t is not the ALJ's evaluation of [the treating physician's] reports that requires a remand in this case[;] . . . it is the evidentiary deficit left by the ALJ's rejection of his reports–not the decision itself–that is troubling."); *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, *4 (N.D.N.Y. Feb. 1, 2013) (ALJ's proper rejection of treating physician opinion nonetheless necessitated remand because absence of any other medical assessment created evidentiary gap); *see also Maxwell H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0148 (LEK/CFH), 2020 WL 1187610, at *7 (N.D.N.Y. Mar. 12, 2020) (Mental RFC not supported by substantial evidence where the only relevant opinion was rendered stale and ALJ relied on his own judgments and interpretation of the medical evidence).

Last, plaintiff argues that the ALJ did not properly evaluate plaintiff's subjective symptoms. The court agrees, in part, based on the discussion above. The ALJ stated that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence . . . for the reasons explained in this decision." (T. 21). Because the ALJ erred in her prior analysis, her analysis of plaintiff's subjective symptoms suffers from the same defect. Should the district court adopt my recommendation, the ALJ is directed to re-evaluate plaintiff's subjective symptoms, and provide specific explanations for her findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

to the individual's statements and the reasons for that weight." *Osario v. Barnhart*, No. 04 Civ. 7515, 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006).

## VII.    NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). On remand, the Commissioner, perhaps based on additional medical opinion evidence and/or the input of a medical consultant, may be able to support a determination that plaintiff was not disabled during some or all of the time period since the amended onset date. Thus, this Court cannot conclude that substantial evidence on the record as a whole indicates that the plaintiff was disabled during the relevant time period, and I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d

Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: December 10, 2021

Andrew T. Baxter
U.S. Magistrate Judge